UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:22-cv-00099-MR

| DUSTIN GENE SCOTT, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) | **ORDER** |
|  | ) |  |
| LISA LNU, et al., | ) |  |
|  | ) |  |
| Defendants. | ) |  |

**THIS MATTER** is before the Court on Defendant Mark Morel's Motion to Dismiss the Complaint, or in the Alternative, Motion for Summary Judgment, [Doc. 13]; Plaintiff's Motion for Default of Defendant Lisa LNU, [Doc. 29]; and Plaintiff's "Motion for Extension of Time to Notice of Appeal for Dismissal," [Doc. 33].

**I.   BACKGROUND**

Pro se Plaintiff Dustin Gene Scott ("Plaintiff") is a prisoner of the State of North Carolina currently incarcerated at Mountain View Correctional Institution in Spruce Pine, North Carolina. He filed this action pursuant to 42 U.S.C. § 1983 on July 20, 2022, related to events alleged to have occurred while he was detained at Defendant Harven A. Crouse Detention Center (the "Jail") in Lincolnton, Lincoln County, North Carolina. [Doc. 1]. Plaintiff's claim

against Defendants Captain Mark Morel and Nurse Lisa LNU survived initial review based on their alleged deliberate indifference to Plaintiff's serious medical needs. [Doc. 9 at 14-15]. Plaintiff's other claim based on the failure to protect Plaintiff from harm and the remaining Defendants were dismissed for Plaintiff's failure to state a claim for relief. [Id. at 15-16].

Plaintiff alleged, in pertinent part, as follows. On the night of April 15, 2022, Plaintiff was "brutally assaulted" in his cell by fellow inmate Dustin Boggers. Plaintiff screamed for help, but none came. The next morning, on April 16, 2022, inmate Boggers returned and again assaulted Plaintiff while he was sleeping. Plaintiff woke up to being kicked and stomped in the head, chest, ribs, back, and face. [Id. at 8].

After the second assault, Defendant Nurse Lisa LNU "'briefly' accessed [Plaintiff's] damaged side bruised and visible air pocket." [Id. at 2]. Defendant Morel "partially did vitals" and "[a]greed with Defendant LNU that Plaintiff 'should suck it up and tough it out!'" [Id. at 3]. Plaintiff had "obvious and immediate trouble breathing" and a visible bulge under his left armpit. [Id. at 7-8]. Defendant Morel refused Plaintiff's pleas to be moved to a different block and denied Plaintiff protective custody. [Id.]. As a result of these assaults, Plaintiff suffered a concussion, a fractured shoulder and fractured ribs, a collapsed lung, and two broken fillings. [Id. at 5].

2

Case 5:22-cv-00099-MR   Document 34   Filed 01/18/23   Page 2 of 16

On April 21, 2022, after Plaintiff's release from the Jail and "after finally getting a ride," he was admitted to CMC Lincoln for emergency pneumothorax surgery by Daniel Rashid, M.D. [Id. at 2, 8]. Plaintiff alleged that he did not seek administrative relief for the alleged acts because he "was unable to obtain permission to use the kiosk prior to unsecured bond" and he "was let out of jail before able to use kiosk to file grievance." [Doc. 1 at 6, 9].

Approximately a week after filing his Complaint, Plaintiff filed his verified Prisoner Administrative Remedies Statement, in which he acknowledged not having exhausted his administrative remedies before filing this action. [Doc. 5]. In this verified Statement, Plaintiff attested that, "[t]his cause of action arose at Harven A. Crouse Detention Center, and [he is] now being housed at McDowell County Sheriff's Office." Plaintiff, therefore, "do[es] not believe [he has] administrative remedies available at this time." [Id.].

Defendants were served on September 6, 2022, and their answers were due on September 27, 2022.[1] [Doc. 12]. On September 22, 2022,

---

[1] Major H. Eason at the Lincoln County Sheriff's Office accepted service on behalf of Defendant Lisa LNU. [Doc. 12]. No counsel has appeared for Defendant LNU, and she has not answered the Complaint or joined in Defendant Morel's motion. Plaintiff has moved for entry of default against Defendant LNU, [Doc. 29], which is addressed below.

Defendant Morel filed the pending motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or alternatively motion for summary judgment, with a supporting brief and exhibits.[2] [Docs. 13, 14, 14-1 to 14-4]. Defendant argues that Plaintiff failed to exhaust administrative remedies pursuant to the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), before filing this action. [Id. at 1]. On September 29, 2022, this Court entered an order, in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), notifying Plaintiff of his right to respond to Defendant's motion and cautioning him that his failure to respond would likely result in Defendant being granted dismissal of Plaintiff's Complaint. [Doc. 16]. Plaintiff was ordered to respond by October 29, 2022. [See id. at 30]. On or about October 20, 2022, Plaintiff sought an extension of time to file a response to Defendant's motion. [Doc. 20]. As grounds, Plaintiff stated, among other things, that he never received copies of Docket Nos. 13 and 14, which are the Defendant's motion and the supporting brief and exhibits, and he, therefore, would be at an unfair disadvantage in responding. [Id. at 1]. On October 24, 2022, the Court granted Plaintiff's motion by text order, extending Plaintiff's response deadline to November 28, 2022, and directing

---

[2] These exhibits include the Declaration of Howard Eason, the Jail Grievance Policy, and grievances filed by Plaintiff in 2022. [Docs. 14-2 to 14-4].

4

the Clerk to send Plaintiff the missing documents. [10/24/2022 Text Order].[3] The same day, before Plaintiff could have received the Court's Order extending the deadline, Plaintiff responded to Defendant's motion, presumably out of concern for not timely responding. [See Doc. 21]. Plaintiff, however, did not address exhaustion, but only restated the allegations of his Complaint and argued in support of his claim. [See id.]. Defendant replied to Plaintiff's purported response, arguing only that Plaintiff failed to address the exhaustion issue. [Doc. 23].

A week later, the Court received what Plaintiff called a "response" to the Court's text order granting the extension to respond to Defendant Morel's motion and an "addendum" to his previous purported response to the motion. [Doc. 24]. In this unverified filing, Plaintiff claimed that the Court mistakenly sent him "duplicitous copies" of Docket Nos. 15 and 16 instead of Docket Nos. 13 and 14. Plaintiff, thus, claimed he still did not have the motion, the brief, or the exhibits. [Id. at 1]. In this filing, again without having received the necessary documents and through reference to the docket sheet only, Plaintiff asserted, in pertinent part, as follows:

> 1) Exhibit 1a - Grievance policy [was] not adhered to because Plaintiff didn't know about the extent to

---

[3] A "court only" docket entry of the same date shows that a copy of the text order, Docket Nos. 13 and 14, and the docket sheet were mailed to Plaintiff that day. [10/24/2022 (Court Only) Docket Entry].

> which his rights were violated until his later admittance to CMC Atrium Health on April 21st, 2022 that Defendants Lisa LNU (and) Mark Morel had lied, denied emergency serious medical treatment needed by Plaintiff on April 16th, 2022. For which Plaintiff was told "nothing could be done and to suck it up."
>
> 2) As to the use of the Harven Crause Detention Centers "Grievance Policy" their Grievance Policy Procedure is to be submitted via electronic kiosk and during recreation times which is only an hour weekend days. And due to the incapacitating injuries sustained (and) in the absence of the pin given when booked into said facility being over the weekend Plaintiff was physically unable to move without pain. And due to being psychologically mortified about being assaulted any additional times sought Protective Custody. (which only comes out at certain weekdays)

[Id. at 2-3]. Defendant Morel responded to this filing. [Doc. 26]. He argued it should be stricken as an improper second response to the motion to dismiss. [Id. at 1]. He also argued that Plaintiff failed to show that the grievance procedure was unavailable to Plaintiff because he "does not claim that anyone either interfered with his ability to file grievances, or refused to provide him with necessary grievance forms." [Id. at 2]. Finally, Defendant argued that Plaintiff chose not to file a grievance while housed at the Jail despite having time to do so. [Id. at 3; see Doc. 26-1: Inmate Log].

On November 15, 2022, after reviewing all the foregoing and noting that Plaintiff continued to claim that he never received a copy of the motion

6

Case 5:22-cv-00099-MR   Document 34   Filed 01/18/23   Page 6 of 16

to dismiss or the supporting brief and exhibits, the Court *sua sponte* allowed Plaintiff 14 days to respond to the motion. [Doc. 27 at 4]. The Court also directed the Clerk to mail Plaintiff those documents by certified mail. [Id.]. Finally, with those documents in hand, Plaintiff filed a proper, though unverified, response to Defendant's motion to dismiss. [See Doc. 30]. In his response, Plaintiff claims for the first time that he did, in fact, exhaust his administrative remedies. [Id. at 1]. Plaintiff points to Section 608.4.1 of the Jail's Grievance Policy, which provides as follows:

> 608.4.1 EXCEPTION TO INITIAL GRIEVANCE FILING
>
> Inmates may request to submit the grievance directly to a Supervisor or to the Captain if they reasonably believe the issues to be grieved are sensitive or that their Safety would be in jeopardy if the contents of the grievance were to become known to other inmates.

[Doc. 30 at 1 (citing Doc. 14-3 at 3)]. Plaintiff claims that he verbally exhausted his administrative remedies through compliance with this provision. [Id.]. Plaintiff states that he "was obviously in fear of and in exertive pain and trauma" after having been assaulted twice and, therefore, directly submitted his grievance to Defendant Morel "since the Captain was not there." [Id. at 1]. Consistent with the allegation in his Complaint, Plaintiff states that Defendant Morel told Plaintiff to "suck it up and tough it out." [Doc.

7

30 at 1]. Plaintiff states that he "appealed his rejected grievance directly to the next Supervisor Shift Sergeant S. Biles that same night" and that Biles told him she would call Lieutenant Reid "to see about what to do." [Id. at 2]. Plaintiff states that, later that night, now April 17, 2022, Plaintiff was informed through his cell speaker that Lieutenant Reid denied his appeal "and refused to remedy it." [Id.]. Finally, Plaintiff asserts that on Monday, April 18, 2022, he "managed to catch the shift supervisor and Sergeant J. Jones who then moved the Plaintiff until he could find out what to do." [Id.]. Plaintiff was given an unsecured $3,000 bond at "video court" due to Plaintiff's "visible serious medical need." [Id.]. In sum, Plaintiff claims he "exhausted all requirements according to PLRA by enacting POLICY 608" by directly submitting grievances to Defendant Morel, Sergeant Biles, Lieutenant Reid, and Sergeant Jones.[4] [Id.].

Defendant Morel replied to Plaintiff's response. [Doc. 31]. Defendant argues that Plaintiff's "third response" should be stricken for violating Local Rule 7.1(E), which only provides for responses and replies to motions. [Id.

---

[4] Plaintiff does not identify the substance of the grievance he contends that he verbally exhausted. That is, he does not specify whether it related to his pending claim of deliberate indifference to his serious medical needs or to his now dismissed claim based on the failure to protect Plaintiff from harm. It appears, however, from Plaintiff's assertions, when viewed together with the allegations of his Complaint, that his alleged verbally exhausted grievance related to his request for protective custody and not to an alleged lack of medical care.

8

at 1]. Defendant argues, in the alternative, that Plaintiff has again failed to show that the grievance procedure was unavailable to him. [Id. at 2]. Defendant does not address Plaintiff's claims that he verbally exhausted his remedies as set forth above. [See Doc. 31].

The matter is now ripe for adjudication.

## II. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. The purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Presley v. City of Charlottesville, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,

637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). The Court need not, however, accept unsupported legal allegations, see Revene v. Charles Cty. Comm'rs, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, Papasan v. Allain, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters of Norfolk v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979).

Defendant Morel here moves to dismiss Plaintiff's Complaint under Rule 12(b)(6) and, alternatively, for summary judgment. If the Court considers materials outside the pleadings, the Court must treat a motion to dismiss as one for summary judgment. Fed. R. Civ. P. 12(d). On a motion to dismiss, however, the Court may consider documents attached to the complaint and documents attached to the motion to dismiss if those documents are integral to the complaint and authentic. See Yarber v. Capital Bank, 944 F.Supp.2d 437, 441 (E.D.N.C. Mar. 18, 2013).

### III. DISCUSSION

The PLRA requires a prisoner to exhaust his administrative remedies before filing a § 1983 action. 42 U.S.C. § 1997e(a). The PLRA provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a

prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. In Porter v. Nussle, the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life. 534 U.S. 516, 532 (2002). The Court ruled that "exhaustion in cases covered by § 1997e(a) is now mandatory." Id. at 524 (citation omitted). The Porter Court stressed that, under the PLRA, exhaustion must take place before the commencement of the civil action to further the efficient administration of justice. Id.

In Woodford v. Ngo, the Supreme Court held that the PLRA exhaustion requirement requires "proper" exhaustion: "Administrative law . . . requir[es] proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)). Further, "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524). Because exhaustion of administrative remedies is an affirmative defense, defendants have the burden of pleading and proving lack of exhaustion. Id. at 216. A prisoner, however, need only exhaust those remedies actually available to him. Ross

v. Blake, 136 S.Ct. 1850, 1855-56 (2016). "Available" means "capable of use for the accomplishment of a purpose" and that which "is accessible or may be obtained." Id. at 1858 (internal quotation marks and citation omitted). Exhaustion is excused "if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). Plaintiff, however, must adduce facts showing that he was prevented from accessing the procedure. Graham v. Gentry, 413 Fed. App'x 660, 663 (4th Cir. 2011).

In support of his motion to dismiss, Defendant Morel has shown the following. The Lincoln County Sheriff's Department has established an inmate grievance policy at the Jail. [Doc. 14-3]. Under this policy, detention staff is to first attempt informal resolution of a grievance. If informal resolution is unsuccessful, the inmate may file a grievance on the Kiosk machine in their block within five days of the complaint or issue. The grievance should be stated "in complete detail." [Id. at 2]. On receipt of an inmate grievance, the Jail Administrator must acknowledge receipt of the grievance and provide a time frame for response. The Jail Administrator may ask a Detention Officer "to gather all associated paperwork and reports and immediately forward" them to the Administrator. [Id.]. Grievances related to medical care are investigated by the responsible physician or the authorized

designee.  The findings of such investigation are forwarded to the Jail Administrator.  An inmate may appeal such findings within five days thereof to the Captain, which is the final level of appeal.  The Captain reviews the grievance and "either confirm[s] or den[ies] it."  [Id. at 3].  If the Captain confirms the grievance, he initiates corrective action.  In either case, the inmate receives a written response to the appeal.  [Id.].

Jail Administrator Howard Eason attests that he reviewed Jail grievance records for grievances submitted by Plaintiff and that such records are kept in the regular course of business. [Doc. 14-2 at ¶¶ 1, 5: Eason Dec.]. According to Eason, Plaintiff submitted ten (10) grievances on the Jail kiosk in 2022.  [Doc.14-2 at ¶ 5, see Doc. 14-4].  Eason attests that these 10 grievances were the only ones filed by Plaintiff in 2022.  [Id.]. These 10 grievances include complaints about the heat at the Jail, Plaintiff's diet, authorized visitors, requests for razors, and requests to see mental health practitioners.  [See Doc. 14-4].  The most recent of these grievances was submitted on February 7, 2022.  [See id. at 3-4, 10].  None of these grievances, however, relate to the events giving rise to this cause of action. [See id.].  As such, Defendant Morel has shown, consistent with Plaintiff's Complaint and verified Prisoner Administrative Remedies Statement, that Plaintiff did not exhaust his administrative remedies.

The Court, therefore, must determine whether Plaintiff has adduced facts showing that administrative remedies were not "available" to him. In making this determination, the Court will consider only the matters properly presented and before it on a motion to dismiss.[5] To that end, Plaintiff alleges that, after the April 15 and 16, 2022 assaults, he "was let out of jail before able to use kiosk to file grievance." [Doc. 1 at 6]. Plaintiff further alleged that he "was unable to obtain permission to use the kiosk prior to unsecured bond," which – by implication – occurred sometime before April 21, 2022. [Id. at 9; see id. at 8]. In his Prisoner Administrative Remedies Statement, Plaintiff attests that he is no longer housed at the Jail and that he, therefore, does not believe administrative remedies are available to him. [Doc. 5 at 1].

Under the PLRA, an administrative remedy is available when it is "capable of use for the accomplishment of a purpose" and "accessible or may be obtained." Ross, 136 S.Ct. at 1858. A plaintiff must show that administrative remedies were not available. Graham, 413 Fed. App'x at 663. Here, Plaintiff alleges that he was "unable to obtain permission to use the kiosk prior to unsecured bond" and, when he was released from Jail shortly after the assaults, he was admitted to the hospital for emergency surgery.

---

[5] Because Defendants have not presented evidence on summary judgment that alters the Court's conclusion here, the Court declines to consider Defendant Morel's motion as one for summary judgment.

Thus, Plaintiff has sufficiently asserted that the Jail grievance procedure was unavailable to him after he was allegedly assaulted and denied medical care and before he was released from custody, even if he had been well enough physically and mentally to seek such access. The Court, therefore, will deny Defendant Morel's motion to dismiss.

Also pending is Plaintiff's motion seeking an extension of the deadline to appeal a dismissal of this action, if necessary, "due to [his] Indigent Status and Restriction of Access to General Population." [Doc. 33]. Plaintiff states that the facility at which he is housed "requires all residents to be in the Disciplinary Block for 30 days." [Id.]. The Court will deny this motion as moot.

## IV. PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT

Plaintiff moves the Court to enter default against Defendant Lisa LNU.[6] As noted, Defendant LNU was served on September 6, 2022.[7] [Doc. 12]. Her answer was due on September 27, 2022. [9/13/2022 Docket Entry].

---

[6] Plaintiff states in his motion that he believes Defendant LNU's last name is Crowder. Plaintiff, however, does not request that the Court update the docket in this matter to reflect this name, so the Court does not do so.

[7] Although there is some question whether proper service was made on Defendant LNU through Major Eason's acceptance of service on her behalf, "a return of service showing service on its face constitutes prima facie evidence of service." Davis v. Jones, No. 5:12-cv-143-RJC, 2013 WL 4494713, at *2 (W.D.N.C. Aug. 19, 2013 (citing Grimsley v. Nelson, 342 N.C. 542, 545 (1996)). Defendant LNU may overcome the presumption of valid service with the "affidavits of more than one person showing unequivocally that proper service was not made" upon her. Id. (quoting Grimley, 342 N.C. at 545).

Defendant LNU, however, has failed to answer Plaintiff's Complaint or otherwise defend this action. The Court, therefore, will grant Plaintiff's motion and direct the Clerk to enter default against Defendant Lisa LNU pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. Plaintiff may now move for default judgment under Rule 55(b)(2).

## V. CONCLUSION

In sum, for the reasons stated herein, the Court will deny Defendant Morel's motion to dismiss, grant Plaintiff's motion for default judgment against Defendant LNU, and deny Plaintiff's motion for extension of time.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant Morel's Motion to Dismiss [Doc. 13] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Default of Defendant Lisa LNU [Doc. 29] is **GRANTED** and Plaintiff's Motion for Extension of Time [Doc. 33] is **DENIED**.

The Clerk is **DIRECTED** to enter default in this matter against Defendant Lisa LNU.

**IT IS SO ORDERED**.

Signed: January 16, 2023

Martin Reidinger
Chief United States District Judge