# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# 5:22-cv-00099-MR

| | | |
|---|---|---|
| DUSTIN GENE SCOTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| MARK MOREL, | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** comes before the Court on Defendant's Motion for Summary Judgment [Doc. 72], Defendant's Motion to Strike Surreply [Doc. 81], and Plaintiff's Motion for Sanctions [Doc. 83].

## I. PROCEDURAL BACKGROUND

Pro se Plaintiff Dustin Gene Scott ("Plaintiff") is currently detained at the Cleveland County Detention Center in Shelby, North Carolina. He filed this action on July 20, 2022, pursuant to 42 U.S.C. § 1983, based, in relevant part, on the alleged denial of medical care following assaults Plaintiff suffered on April 15 and 16, 2022, by another detainee at the Harven A. Crouse Detention Center (the "Jail") in Lincolnton, Lincoln County, North Carolina. [Doc. 1]. Plaintiff named several Defendants in this matter and his Eighth Amendment medical deliberate indifference claims against Jail Nurse Lisa

Crowder and Jail Sergeant Mark Morel passed initial review. [Doc. 9]. Relative to exhaustion of his administrative remedies, Plaintiff alleged that, after the April 15 and 16, 2022 assaults, he "was let out of jail before able to use kiosk to file grievance" and that he "was unable to obtain permission to use the kiosk prior to unsecured bond." [Doc. 1 at 6, 9]. In his verified Administrative Remedies Statement, which he filed about a week after his Complaint, Plaintiff attested that he was no longer at the Jail and did not believe administrative remedies were available to him. [Doc. 5 at 1].

Defendant Morel moved to dismiss Plaintiff's Complaint for Plaintiff's failure to exhaust administrative remedies under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) before filing this action. [Doc. 13]. The Court denied the motion, finding that Plaintiff sufficiently showed through the allegations of his Complaint and his Administrative Remedy Statement that the administrative remedies were unavailable to him. [Doc. 34 at 14-15]. On May 30, 2023, the Court granted Defendant Crowder's motion to dismiss for Plaintiff's failure to effect service on Defendant Crowder. [Doc. 61]. As such, Defendant Morel is the only remaining Defendant.

Plaintiff filed three separate discovery motions in this action, all of which the Court denied. [Docs. 11, 15, 58, 60, 67, 75]. In the first, Plaintiff improperly moved the Court to order Defendants Crowder and Morel to

2

Case 5:22-cv-00099-MR Document 85 Filed 11/09/23 Page 2 of 18

produce certain discovery before Defendants had answered the Complaint. [See Doc. 11]. In the second, Plaintiff moved to compel Defendant Morel to produce certain discovery, including "stored digital media," and for sanctions. [Doc. 58]. The Court denied Plaintiff's motion to compel for failure to show that he had requested the documents and things he complained were not produced and for failure to certify that he had conferred or attempted to confer in good faith with Defendants in accordance with Rule 37(a)(1) of the Federal Rules of Civil Procedure before filing the motion. [Doc. 60]. The Court also denied Plaintiff's motion for sanctions because he failed to show any grounds in support thereof. [Id.]. In the third discovery motion, Plaintiff moved to compel Defendant Morel "to comply with the discovery in this action" and produce "crucial video of the date of cause of this action; April 16th, 2022." [Doc. 67]. The Court denied Plaintiff's motion, in part, because he again failed to satisfy Rule 37(a)(1)'s certification requirement. [Doc. 75]. The Court advised Plaintiff that, "[i]f this matter proceeds to trial and on proper motion, the Court will address the issue of spoliation and determine whether an adverse evidentiary inference against Defendant Morel may be drawn relative to the potentially missing video footage."[1] [Id. at 6-7]. On

---

[1] Plaintiff's materials reflected that Defendant Morel did respond to Plaintiff's request for video footage of the incident, stating that he, Morel, "has no documents responsive to this

August 3, 2023, Plaintiff moved for sanctions, arguing that defense counsel lied when he claimed that Plaintiff "never sent Defendant a request for production of documents." [Doc. 71; see Doc. 69]. The Court denied Plaintiff's second motion for sanctions, noting that, "[w]hile it appears that defense counsel misspoke regarding whether Plaintiff had served a request for production of documents, Plaintiff has showed that Defendant responded to his Request for Production well before Plaintiff filed the subject motion to compel." [Doc. 75 at 7-8]. Neither party sought an extension of the dispositive motions deadline in this matter.

On August 4, 2023, Defendant Morel moved for summary judgment. [Doc. 72]. In support of his motion, he submitted a memorandum; his own declaration; the Declaration of Vida Reid, a former Defendant in this action and Captain for the Lincoln County Sheriff's Office (LCSO) and Jail administrator; and Plaintiff's phone call records during his detention at the Jail. [Docs. 73, 73-1 to 73-4]. Defendant argues that summary judgment should be granted because Plaintiff did not exhaust his administrative remedies before filing his Complaint and the grievance procedure was not unavailable to Plaintiff; Defendant was not deliberately indifferent to the

---

request." [See Doc. 71 at 6-8]. The record does not show that Plaintiff ever attempted to subpoena the video from the Jail.

4

Plaintiff's medical needs on April 16, 2022; and Defendant is entitled to qualified immunity. [Doc. 73].

Thereafter, the Court entered an order in accordance with <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motions and of the manner in which evidence could be submitted to the Court. [Doc. 74]. Plaintiff timely responded to Defendant's summary judgment motion, claiming he never received Defendant's motion and only learned of it through the Court's <u>Roseboro</u> Order. [Doc. 78 at 1]. Rather than asking for more time to respond or for a copy of the motion, Plaintiff submitted his own declaration [Doc. 78-1] and argues that the disputed issues "should be submitted to a jury with all of the evidence Defendant refused to submit to Plaintiff during Discover. I.E. video footage of the Defendants deliberate indifference toward Plaintiff's serious medical need, on April 16th, 22." [Doc. 78 at 2 (errors uncorrected)]. Plaintiff also states that he "is trying to get a former sergeant to write a sworn Declaration to verify Plaintiff's allegetions [*sic*] to proceed with this action on its merits to trial." [<u>Id.</u> at 3]. Plaintiff did not address Defendant's argument that Plaintiff failed to exhaust his administrative remedies. [<u>See</u> Docs. 78, 78-1]. Defendant replied [Doc. 79] and Plaintiff filed an unauthorized surreply

5

Case 5:22-cv-00099-MR    Document 85    Filed 11/09/23    Page 5 of 18

[Doc. 80], which Defendant moved to strike [Doc. 81].[2]  Finally, on October 18, 2023, Plaintiff filed his third motion for sanctions in this case [Doc. 83] and Defendant responded [Doc. 84].

This matter is now ripe for adjudication.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

---

[2] The Court will grant Defendant's motion to strike for Plaintiff's failure to seek leave of Court before filing his surreply in violation of Local Rule 7.1(e).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

Scott, 550 U.S. at 380.

## III. FACTUAL BACKGROUND

The relevant forecast of evidence in the light most favorable to Plaintiff is as follows.

From April 14 to April 18, 2022, Plaintiff was detained at the Jail. [Doc. 78-1 at 1: Plaintiff Dec.]. Defendant Morel was the supervising shift sergeant at the Jail. [Doc. 73-2 at ¶ 3: Morel Dec.]. When detainees arrive at the Jail,

8

Case 5:22-cv-00099-MR   Document 85   Filed 11/09/23   Page 8 of 18

they are given a unique personal identification number ("PIN"). [Doc. 73-3 at ¶ 3: Reid Dec.]. Each detainee is given a new PIN on every booking. [Id.]. Each detainee also has a unique inmate identification number ("IIN") that is the same any time that individual is detained at the Jail. [Id. at ¶ 4]. When a detainee makes a phone call, files a grievance, or purchases something from the commissary, those events are tracked using the inmate's IIN. Plaintiff's IIN was 1824. [Id.].

On April 16, 2022, after being assaulted by a fellow detainee and injured, Defendant Morel escorted Plaintiff from Bravo Block to a holding cell for a sick call. [Doc. 78-1; Doc. 73-2 at ¶ 4]. On the short walk to the holding cell, Plaintiff complained about "extreme pain and strenously [*sic*] labored breathing." [Doc. 78-1 at 1]. Defendant Morel "was in [an] indifferent manner and joked that plaintiff should 'suck it up' and 'tough it out.'" [Doc. 78-1 at 1]. Defendant Morel rolled a medical equipment cart "that checks your temperature, arm cuff, and places the sensor on your finger" to the booking area "out of Holding Cell 2." [Doc. 73-2 at ¶ 5; Doc. 78-1 at 2]. After Plaintiff waited in the holding cell, Nurse Crowder arrived and examined the Plaintiff, while Defendant Morel observed. [Doc. 73-2 at ¶ 6]. She took Plaintiff's vital signs and lifted his shirt, briefly touching Plaintiff's bruised side and fractured ribs. [Doc. 78-1 at 2; Doc. 73-2 at ¶ 6]. When Nurse Crowder was examining

9

the Plaintiff, Defendant Morel commented on Plaintiff's "visible air pocket and Plaintiff's F**ked up side," and was indifferent while Plaintiff begged to go to the emergency room. [Doc. 78-1 at 2]. According to Defendant Morel, Plaintiff did not appear to need emergency care. [Doc. 73-2 at ¶ 6]. Plaintiff was given pain medication. [Doc. 78-1 at 2]. Nurse Crowder told Defendant Morel that Plaintiff did not need emergency medical care and that Plaintiff could return to his cell. [Doc. 73-2 at ¶ 6]. According to Plaintiff, both Defendant Morel and Nurse Crowder told him to "suck it up" and "tough it out" and that he was being a "wuss." [Doc. 78-1 at 2]. Defendant Morel and another officer took Plaintiff back to Bravo Block, "joking and laughing at [Plaintiff's] condition." [Doc. 78-1 at 2; see Doc. 73-2 at ¶ 7].

From April 15, 2022, to April 17, 2022, Plaintiff made 23 phone calls, 15 of which were made on April 17. [Doc. 73-3 at ¶¶ 6-7; Doc. 73-4 at 2-6]. The phones at the Jail are located outside of the detainees' cells in the pod area. A detainee must leave his cell to make a phone call. The kiosk where detainees can file grievances is approximately 10 to 14 feet from the phones. [Doc. 73-3 at ¶ 8]. Detainees do not need permission to use the kiosk. Rather, they may use the kiosk whenever they are out of their cells. [Doc. 73-3 at ¶ 9].

## IV. DISCUSSION

### A. Exhaustion

The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In Jones v. Bock, 549 U.S. 199 (2007), the Supreme Court stated that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Id. at 211 (citing Porter, 534 U.S. at 524). The Supreme Court has highlighted that the exhaustion of administrative remedies must occur before a civil action is commenced. Porter v. Nussle, 534 U.S. 516 (2002). For example, a prisoner may not exhaust his administrative remedies during the pendency of a Section 1983 action. See Germain v. Shearin, 653 Fed. Appx. 231, 234 (4th Cir. 2016); French v. Warden, 442 Fed. App'x 845, 846 (4th Cir. 2011). Exhaustion is excused "if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). Futility, however, is no exception to the exhaustion requirement. Reynolds v. Doe, 431 Fed. App'x 221, 222 (4th Cir. 2011) (citing Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001)). Nor is an inmate's ignorance of the requirement.

Goodwin v. Beasley, 2011 WL 835937, *3 (M.D.N.C. Mar. 3, 2011) ("Courts have squarely rejected prisoners' attempts to bypass the exhaustion requirements by merely arguing lack of knowledge about the grievance process."); Smith v. Boyd, 2008 WL 2763841, *1 (D.S.C. July 11, 2008) ("This court cannot waive the exhaustion requirement, which was specifically mandated by Congress, based on Plaintiff's ignorance of the requirement or any perceived futility or inadequacy with the administrative grievance process.").

The forecast of evidence here shows that Plaintiff made 15 phone calls after the alleged deficient medical care and before he was released from the Jail. The forecast of evidence also shows that the telephones where Plaintiff made these calls is only 10 to 14 feet away from the kiosk where grievances are asserted at the Jail and that Plaintiff had free access to the kiosk while he was out of his cell. As such, the forecast of evidence shows that administrative remedies were available to the Plaintiff after the events at issue and before he was released from the Jail, contrary to Plaintiff's allegations. The forecast of evidence also shows that Plaintiff did not exhaust his administrative remedies before filing the Complaint in this matter. That is, in his verified Administrative Remedies Statement filed shortly after his Complaint, Plaintiff acknowledged that he had not exhausted his

administrative remedies because he was no longer housed at the Jail.³ [Doc. 5].

Accordingly, the Court will grant Defendant Morel's motion for summary judgment on this ground. Because dismissals based on the failure to exhaust administrative remedies are without prejudice, the Court addresses Defendant Morel's other grounds for summary judgment. See Dillard v. Anderson, No. 2:13-CV-31-FDW, 2010 WL 9553022, at *2 n.2 (W.D.N.C. Sept. 6, 2010) (Whitney, C.J.) ("A dismissal for failure to exhaust administrative remedies is without prejudice.").

**B.  Deliberate Indifference**

Claims under 42 U.S.C. § 1983 based on an alleged lack of or inappropriate medical treatment fall within the Eighth Amendment's prohibition against cruel and unusual punishment.⁴ Estelle v. Gamble, 429

---

³ While Plaintiff argues in his unsworn, unauthorized Surreply that he "actually exhausted the requirements of the PLRA … [i]n accordance with Lincoln County's Sheriff's Office own Policy 608.4.1 Exception to Initial Grievance Filing," [Doc. 80 at 2], he presented no evidence in a form acceptable at summary judgment on this issue. Moreover, as the Court noted in its Order denying Defendant Morel's motion to dismiss for lack of exhaustion, Plaintiff did not identify the substance of the grievance he contends he verbally exhausted under this Policy, and it appeared from the information before the Court then that his alleged verbally exhausted grievance related to Plaintiff's request for protective custody stemming from the assaults he suffered and not to an alleged lack of medical care. [See Doc. 34 at 8 n. 4].

⁴ Because the Plaintiff was a pre-trial detainee at the relevant times, his deliberate indifference claims are properly brought under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment. See City of Revere v. Mass. Gen. Hosp., 463 U.S. 239 (1983). However, the Fourth Circuit has long applied the Eighth Amendment

13

U.S. 97, 104 (1976). To state a claim under the Eighth Amendment, a plaintiff must show a "deliberate indifference to serious medical needs" of the inmate. Id. "Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." Young v. City of Mt. Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001) (citations omitted). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). Allegations that might be sufficient to support negligence and medical malpractice claims do not, without more, rise to the level of a cognizable Section 1983 claim. Estelle, 429 U.S. at 106; Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it.").

---

deliberate indifference standard to pretrial detainees' deliberate indifference claims. See Moss v. Harwood, 19 F.4th 614, 624 n.4 (4th Cir. 2021) (noting that, "under Kingsley v. Hendrickson, 576 U.S. 389, 135 S.Ct. 2466, 192 L.Ed.2d 416 (2015), pretrial detainees bringing excessive force claims under the Fourteenth Amendment are no longer required to satisfy the analogous subjective component that governs the Eighth Amendment excessive force claims of convicted prisoners ... [however] the Supreme Court has not extended Kingsley beyond the excessive force context to deliberate indifference claims, ... and neither has our court...."); Mays v. Sprinkle, 992 F.3d 295, 300-02 (4th Cir. 2021) (declining to decide whether a pretrial detainee must satisfy the subjective component of the Eight Amendment deliberate indifference standard).

To be found liable under the Eighth Amendment, a prison official must know of and consciously or intentionally disregard "an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994); Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998). Deliberate indifference describes a state of mind more blameworthy than negligence, requiring (1) that a defendant have been personally aware of facts from which the inference could be drawn that Plaintiff would suffer a substantial risk of serious harm; and (2) that the defendant had actually drawn the inference and recognized the existence of such a risk. Farmer, 511 U.S. 825, 837 (1994). A prison official, however, is not liable if he knew the underlying facts but believed, even if unsoundly, that the risk to which the facts gave rise was insubstantial or nonexistent. Id. A jail official's "failure to take further action once he had referred the matter to the medical providers can[not] be viewed as deliberate indifference." Greeno v. Daley, 414 F.3d 645, 655-56 (7th Cir. 2005). Moreover, "prison personnel may rely on the opinion of the medical staff as to the proper course of treatment." Shelton v. Angelone, 148 F.Supp.2d 670, 678 (W.D. Va. Mar. 21, 2001) (citing Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1984) & Boyce v. Alizaduh, 595 F.2d 948 (4th Cir. 1979)).

Here, the forecast of evidence shows that Defendant Morel escorted Plaintiff to and from a holding cell for a sick call. The forecast of evidence shows that Nurse Crowder examined the Plaintiff, determined he did not need emergency medical care, and released him back to his cell. Even if it is true that Defendant Morel joked about Plaintiff's condition and told him to "suck it up," this forecast of evidence does not support a finding that Defendant Morel was subjectively aware of a serious medical need or that he should have done anything differently in light of Nurse Crowder's assessment and findings. Defendant Morel's failure to take further action or override the findings and recommendation of Nurse Crowder, a medical professional, under these circumstances does not constitute deliberate indifference to a serious medical need. See Greeno, 414 F.3d at 655-56. Summary judgment for Defendant Morel is, therefore, appropriate.

Additionally, Defendant Morel is entitled to qualified immunity. Qualified immunity shields "government officials performing discretionary functions … from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Because Plaintiff has failed to forecast sufficient evidence that Defendant Morel's conduct violated any constitutional right, he is entitled to

16

Case 5:22-cv-00099-MR   Document 85   Filed 11/09/23   Page 16 of 18

qualified immunity.  See Pearson v. Callahan, 555 U.S. 223, 232 (2009).

## V. PLAINTIFF'S MOTION FOR SANCTIONS

Also pending is Plaintiff's third motion for sanctions in this matter.  [Doc. 83].  In this motion, Plaintiff takes issue with various incidents of the litigation process of which he is unfamiliar as a pro se litigant, argues that "several parties" and their attorney are "clearly and plainly" involved in "deception and perjury" due to alleged discrepancies in the record regarding when certain Jail officials were promoted in rank, takes issue with stock language in Defendant's discovery response, complains that "Defendant is trying to get summary judgement [*sic*] before the Court makes them disclose such vital [video footage]," and further argues on the issue of exhaustion of administrative remedies.  [See id.].  As with Plaintiff's previous two motions for sanctions, nothing in Plaintiff's motion supports the imposition of sanctions against the Defendant or his attorney.  The Court will deny this motion.

## VI. CONCLUSION

In sum, for the reasons stated herein, the Court grants summary judgment for Defendant Morel, grants Defendant Morel's motion to strike, and denies Plaintiff's motion for sanctions.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's Motion for Summary Judgment [Doc. 72] is **GRANTED** and this action is **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike [Doc. 81] is **GRANTED** and Plaintiff's Surreply [Doc. 80] is hereby **STRICKEN** from the record in this matter.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Sanctions [Doc. 83] is **DENIED**.

The Clerk is respectfully instructed to terminate this action.

Signed: November 8, 2023

Martin Reidinger
Chief United States District Judge